UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 07-20907-CIV-GOLD/MCALILEY

SUPER VISION INTERNATIONAL, INC.,

     Plaintiff,

v.

MEGA INTERNATIONAL
COMMERCIAL BANK CO., LTD.,

     Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS; CLOSING CASE

THIS CAUSE comes before the Court on the Motion to Dismiss [DE 63] filed by

Defendant Mega International Commercial Bank Co., Ltd. ("Mega") on April 15, 2008, to

dismiss the Plaintiff's Second Amended Complaint with prejudice.  Plaintiff Super Vision

International, Inc., ("Super") originally brought this action against Mega under the

Racketeer Influenced and Corrupt Organizations Act (RICO) for violations of § 1962(a), §

1962(c), and § 1962(d), and for breach of contract and fraudulent transfer.  Defendant

Mega initially moved to dismiss all claims under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, and after hearing oral argument, I granted Defendant Mega's Motion on

February 5, 2008.  DE 57.

On February 25, 2008, the Plaintiff   filed a Second Amended Complaint [DE 58],

which alleges only claims for civil RICO violations of § 1962(c) and § 1962(d). Defendant

Mega again moved to dismiss these claims [DE 63], and after considering the Motion,

Notice of Supplemental Authority, Responses, and Replies, and af ter hearing oral

1

argument on July 11, 2008, I grant the Motion to Dismiss with prejudice.

I.    Standard of Review

On a motion to dismiss, the court accepts a complaint's well-pleaded allegations as true.    *Hoffend v. Villa (In re Villa)*, 261 F.3d 1148, 1150 (11th Cir. 2001).  The court construes the pleadings broadly and views the allegations in the complaint in the light most favorable to the plaintiff.  *Watts v. Fla. Int'l Univ., et al.*, 495 F.3d 1289, 1295  (11th Cir. 2007).

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "more than mere labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).  Indeed, "a formulaic recitation of the elements of a cause of action will not do." *Watts*, 495 F.3d at 1295 (quoting *Bell Atlantic*, 127 S.Ct. at 1965).

Although the court does not analyze the probability of actual proof of the complaint's allegations on a motion to dismiss, a plaintiff must allege "'enough factual matter (taken as true) to suggest' the required element." *Watts*, 495 F.3d at 1295.  Under the law of this Circuit, the pleading must create "plausible grounds to infer." *Id.*  Thus, a claim will survive a motion to dismiss if it identifies "facts that are suggestive enough to render [the element] plausible." *Id.* at 1296 (quoting *Bell Atlantic*, 127 S.Ct. at 1965).  In addition, under the law of this Circuit, civil RICO claims must be pled with greater specificity, and they must satisfy the requirements of Federal Rule of Civil Procedures 9(b)[1].  *Ambrosia  Coal & Constr. Co.*

---

[1]

Rule 9(b) provides:
> (b) Fraud, Mistake, Condition of the Mind.  In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with

2

*v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007).

II.     Factual Allegations

Based on the Second Amended Complaint [DE 58] ("S.A.C.") and the Plaintiff's Civil RICO Statement [DE 61], the relevant allegations are included below. The majority of these allegations were also alleged in Plaintiff's First Amended Complaint, which I previously dismissed. *See* DE 57. I emphasize in this Order the new allegations, where appropriate.

Plaintiff Super Vision holds a judgment of almost $50 million that it won in 2003 after trial in Florida state court in Orange County against Samson Wu and Wu's companies and associates. S.A.C. ¶ 7. Based on the allegations in the Second Amended Complaint, the Orange County case against Wu was brought because Wu stole, replicated, and sold Plaintiff Super Vision's products at lower prices, thus devastating Super Vision's market presence in the fiber optic industry. *Id.* at ¶ 9. Plaintiff Super recorded that judgment with the State of Florida. *Id.* at ¶ 11.

As initially alleged, and re-alleged in the Second Amended Complaint, Mega Bank is based in Hong Kong and has branches in Panama. *Id.* at ¶ 39. In May 2003, Wu allegedly acquired a residence in Panama City in his own name and mortgaged it to Mega Bank for $250,000. *Id.* at ¶ 13. In October 2003, Wu allegedly gave away that residence to Stefanie, S.A., a Wu-controlled entity, and Mega allegedly consented to this transfer. *Id.* at ¶ 14. At the time of this transfer, Angel Caballero was allegedly (1) the President and

particularity.   Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

3

Legal Representative of Stefanie, S.A., and (2) a manager at Mega's Colon Free Zone Branch. *Id.* The transfer of Wu's residence to Stefanie, S.A. was allegedly recorded in Panamanian public records without mention of the previous owner, Samson Wu. *Id.* at ¶ 15.

In 2004, Plaintiff Super allegedly attempted to reach Wu's assets in Panama, and placed several hundred thousand dollars in accounts in order to acquire a required bond in connection with Panamanian legal process. *Id.* at ¶ 16. However, Super was only able to obtain limited relief. *Id.* at ¶ 16.

The Florida state court in Orange County ordered Wu to make disclosures in aid of execution. *Id.* at ¶ 17. Pursuant to that state court order, Plaintiff Super obtained from Wu a written directive to verify funds in accounts in Panama which Wu owned or had an interest in, including those that Wu may have controlled through his business entities. *Id.* This directive from Wu states that the disclosures are authorized in connection with any request to enforce the judgment in the state court case. *Id.* at ¶ 18. Specifically, the consent form signed by Wu states, in part:

> I, Samson Wu, of P.O. Box 720016, Miami, do hereby direct any bank or trust company at which I may have a bank account of any kind or at which a corporation has a bank account of any kind upon which I am authorized to draw, and its officers, employees and agents, to disclose all information and deliver copies of all documents of every nature in your possession or control which relate to said bank account to the law firm . . . for the period of January 2002 to the present date."
> S.A.C., Ex. D.

Plaintiff's Panamanian counsel allegedly contacted Mega regarding Wu's accounts, and Mega denied knowledge of Wu or his holdings at Mega. S.A.C. at ¶ 19-20. Plaintiff's Panamanian counsel presented Mega with the written directive from Wu in person at the

4

Colon Free Zone branch in May 2004. *Id.* at ¶ 19. Although Mega provided counsel access only to a small checking account in Wu's name, Mega was allegedly aware of other accounts to which the consent would apply. *Id.* at 20. Based on the Plaintiff's allegations, Mega did not acknowledge the extent of Wu's holdings, the existence of the Panama City residence, or the fact that an officer at Mega served on the board of a Wu-controlled entity. *Id.* at ¶ 35. Plaintiff's counsel sent Mega a letter memorializing his visit to Mega's Colon Free Zone branch.    Following this visit, Mega allegedly did not correct any misrepresentations, comment on their accuracy, or otherwise provide Super with other information required by the consent form. *Id.* at ¶ 36.

Plaintiff re-alleges in the Second Amended Complaint that Plaintiff Super subsequently learned that Mega representatives visited with Wu in Miami-Dade County, Florida several times a year in connection with his banking relationship, and on these visits, the Mega official received checks and deposit slips from Wu. *Id.* at ¶ 21. These visits allegedly occurred at the offices of Marsam Trading, a Wu business that was implicated in theft of trade secrets at issue in the Florida state court litigation. *Id.* at ¶ 21. Wu allegedly served as an officer or controlling principal of Marsam Trading at material times. *Id.* at ¶ 23. Mega and Wu were allegedly associates from at least 1998. *Id.* at ¶ 29. In addition, financial reports and statements regarding the going concern status of the Wu business operations were allegedly provided on a regular basis to banks with which Wu had a business relationship, including Defendant Mega. *Id.* at ¶ 22.

Plaintiff Super further re-alleges that Stefanie, S.A. is Wu's primary business in Panama and it is an affiliate of Marsam Trading. *Id.* at ¶ 23. Mega maintained accounts

5

for Stefanie, S.A. Id. Wu signed an undated settlement agreement on behalf of Stefanie, S.A.C., Ex. F, and Super obtained this settlement agreement after the above communications with Mega occurred. *Id.* at ¶ 23. Wire transfers between Marsam Trading's bank account at Ocean Bank in Miami and Stefanie, S.A. were allegedly made, including at least one transfer from Wu's business account at Ocean Bank in Miami to Stefanie, S.A. S.A.C. at ¶ 24, Ex. G. Super learned of this one transfer after the communications described above with Mega. S.A.C. at ¶ 24.

Based on the above, Mega allegedly was more than Wu's bank. *Id.* at ¶ 26. It allegedly allowed employees to serve as officers in Wu entities and maintained accounts for Wu entities with full knowledge of their control by Wu, *id.*, and the extensive protection that Mega afforded to Wu's information was irregular.[2] RICO Statement [DE 61] at 2.

According to the Second Amended Complaint, Mega did not acknowledge the extent of Wu's holdings, the existence of his Panama City residence on which Mega held a mortgage, or service on the board of Stefanie, S.A. by Caballero. S.A.C. at ¶ 35. Mega also did not correct its alleged misrepresentations following Super's visit to Mega in Panama. *Id.* at ¶ 36. Plaintiff Super suspects, based on Wu's written directive and independent investigation, that there are or were, at material times, some Wu funds in accounts at Mega, but Super cannot verify the extent of such funds without Mega's involvement. *Id.* at ¶ 37.

Because of Mega's relationship with Wu, Mega was allegedly part of a RICO

---

[2]

This allegation that the extensive protection afforded by Mega to Wu's information was irregular is new and appeared in the RICO statement after the Second Amended Complaint was filed.

enterprise that was intended to defraud Wu's creditors and make Wu "lawsuit proof," and this defrauded and damaged Super. *Id.* at ¶ 27. Based on the RICO Statement, there have been no criminal convictions as a result of the above alleged scheme. RICO Statement at 5. However, Plaintiff alleges that the threat of criminal activity continues. *Id.*

A.    Plaintiff's civil RICO claim under § 1962(c)

With respect to Plaintiff's claim under § 1962(c), the RICO enterprise was allegedly the Wu/Mega enterprise. *Id.* at ¶ 40. Plaintiff alleges that Mega's relationship with Wu constitutes an association-in-fact enterprise. RICO Statement at 3.

The common purpose of this enterprise was to make Wu "lawsuit proof" and nurture and grow Wu's banking relationship with Mega. S.A.C. at ¶ 40. Plaintiff alleges that this activity is an element of Mega's ongoing way of doing business because Mega maintains the Wu banking association, refuses to disclose Wu's account information or correct alleged misrepresentations, and continues to profit–through wire transfer fees, deposits, and banking business[3]–by preventing Super from accessing information about Wu-controlled accounts. *Id.* at ¶ 40-41. Plaintiff alleges that Mega "controlled . . . access to necessary information regarding Wu's banking activities." *Id.* at ¶ 41.[4] Plaintiff alleges that Mega "willingly participated in Wu's business philosophy to maintain his status as lawsuit

---

[3]

This allegation that Mega profited from Wu's banking business is new in the Second Amended Complaint. The First Amended Complaint alleged only that Mega benefitted from Wu's deposits and wire transfer fees.

[4]

This allegation that Mega "controlled . . . access to necessary information regarding Wu's banking activities" is new in the Second Amended Complaint. Plaintiff had previously alleged that Mega was "privy to the extent of [Wu's] holdings." First Am. Compl. [DE 22] at ¶ 28.

7

proof,"[5] id. at ¶ 8, and thus participated in a scheme to defraud Plaintiff and other Wu creditors by enabling Wu to use Mega's facilities and services as an instrumentality of that scheme. RICO Statement at 3. Furthermore, Mega allegedly knew or should have known, based on Mega's relationship with Wu, that Wu intended to establish a shell game. Id. at 6. Plaintiff alleges that Mega participates in the enterprise by permitting this shell game to continue and selectively disclosing information about Wu's accounts.[6] Id. at 7.

Super bases its claims under § 1962(c) on Mega's alleged mail and wire fraud, as evidenced by Mega's participation in transfers of funds by Wu to and from Miami, executed by telephone, facsimile, mail and/or in-person communications from 2000 to 2001, and which continued throughout the association between Wu and Mega. S.A.C. at ¶ 38. Super alleges that funds were transferred by wire and confirmed by fax from Wu accounts at a Miami bank to the account at Mega of a Wu-controlled affiliate from 1998 until at least 2000, and which continued throughout the association between Wu and Mega. Id.

Plaintiff alleges that Mega made or permitted the following fraudulent communications, which allegedly constitute predicate acts: (1) permitting the transfer in 2003 of Wu's Panamanian residence and the subsequent recording of that transfer in Panamanian public records; (2) denying knowledge in 2004 of Wu's banking relationship

---

[5]

This allegation that Mega willingly participated in Wu's business philosophy to maintain his status as lawsuit proof is new and appears for the first time in the Second Amended Complaint.

[6]

This allegation that Mega "selectively disclos[ed]" information about Wu's accounts is new and appears for the first time in the RICO Statement following the Second Amended Complaint. The underlying allegations that Mega only disclosed the existence of one account by Wu were also alleged in the First Amended Complaint. See pg. 6 of this Order for a discussion of some of these allegations.

with Mega upon inquiry by Super's Panamanian counsel; (3) failing to disclose at an in-person meeting in 2004 and materially misrepresenting the extent of Wu's holdings with Mega; and (4) in May 2004 to the present, materially omitting or failing to disclose facts that it allegedly had a duty to disclose to Super based on the consent form. RICO Statement at 4-5. In addition, Mega allegedly made each of the above representations with knowledge of the likelihood that its content would be transmitted by means of the mail or wires to Super in Florida. *Id.* at 5.

Mega allegedly used two other wrongdoers–Samson Wu and Caballero–to execute the scheme to defraud and assist it in defrauding Super. *Id.* at 4. Mega allegedly permitted both individuals to use Mega accounts as storehouses for money that could be hidden from Wu's creditors. *Id.*

Super alleges that it had to resort to Mega because Wu had alleged indigent status in the United States.[7] S.A.C. at ¶ 31. As stated in the Second Amended Complaint, "Mega's untruths could not be definitively refuted, and as a result, Super Vision was forced to accept them 'as is' and take actions consistent with them."[8] *Id.* at ¶ 44. In addition, efforts to prove that Mega's representations were not true only further damaged Super. *Id.* Plaintiff Super alleges that it was forced to seek other sources of information, and Super has allegedly hired private investigators and engaged in Panamanian legal process,

---

[7]

This allegation that Super had to resort to Mega because Wu had alleged indigent status in the United States is new and appears for the first time in the Second Amended Complaint.

[8]

This allegation that Super was forced to take Mega's untruths "as is" and take actions consistent with them appears for the first time in the Second Amended Complaint.

public records searches, inquiries regarding other banks, and resorted to alternative locations across the globe[9]. *Id.* at ¶ 43.

Super alleges that it was damaged because it has been denied compensation for the harms perpetrated by Wu, as recognized in the Orange County judgment. *Id.* at ¶ 43. Mega's actions deprived Super of information necessary for execution on that judgment and hindered Super's efforts to collect on the judgment. *Id.* at ¶ 42. By depriving Super of information bearing on the value of its judgment, Mega has allegedly deprived Super of specified valuable property. *Id.* at ¶ 46. Super also alleges that other Wu creditors have been harmed, including Ocean Bank. Ocean Bank assigned its claims against Wu to Super. *Id.* at ¶ 45.

## B. Plaintiff's civil RICO claim under § 1962(d)

Mega allegedly agreed to the overall objective of the RICO offenses under § 1962(c), and this agreement was allegedly in concert with one or more of Mega's agents, Caballero, and/or Wu. *Id.* at ¶ 47; RICO Statement at 11. One Mega agent allegedly involved was a Mega representative who visited Wu in Miami, as described previously. S.A.C. at ¶ 48. Super and Wu's creditors were allegedly deprived of funds to which they are entitled through a common plan or ordered scheme, which involved the establishment of multiple business entities, entity bank accounts, and individual accounts, all of which were under the de facto control of Wu. RICO Statement at 12. The enterprise relevant to Plaintiff's RICO conspiracy claim is the same enterprise alleged under § 1962(c). *Id.* at 13-

---

9

This allegation that Super resorted to alternative locations across the globe is new and appears for the first time in the Second Amended Complaint.

10

14.

According to Plaintiff's allegations, the overt acts allegedly committed in furtherance of the conspiracy included the following: (1) denying the extent of Wu's holdings upon initial inquiry in 2004; (2) refusing to disclose information to Super regarding Wu's holdings at an in-person meeting in 2004; (3) permitting the transfer in 2003 of Wu's residence to Stefanie, S.A.; (4) recording the transfer of the residence without reference to the previous owner; (5) regular visits by a Mega representative to Marsam Trading in Miami, including multiple visits in 2000-2001, to further the Wu-Mega association; (6) regular transfers reflecting transactions that were not at arms-length between Wu entities, funneled through Mega to Stefanie, S.A.; (7) regular payments into Panamanian Wu-controlled entities' accounts that were payments for Wu's United States-based entities; (8) permitting a Mega officer (Caballero) in 2003 to hold office in Stefanie, S.A., but disavowing knowledge of Wu's holdings in 2004; and (9) refusing ro correct misrepresentations regarding Wu's holdings at Mega and the nature of Mega's relationship with Wu.  S.A.C. at ¶ 49.

Plaintiff alleges that Wu, Caballero, and other unknown individuals had a common objective to further the illegal acts alleged in Plaintiff's RICO claim under § 1962(c).  *Id.* Plaintiff alleges in the alternative that the above-listed acts demonstrate that Mega agreed to the overall objective of the conspiracy to conceal Wu's funds from Super by unlawful means because the acts allegedly served to effect an illegitimate objective through irregular and suspicious business activity.  *Id.*

Caballero was allegedly a Mega official who partnered with Wu in certain business endeavors and permitted Mega to serve as a useful instrument in effecting racketeering activities.  *Id.* at ¶ 50.  Mega, in concert with one or more of its agents, allegedly received

11

benefits from the above offenses, including the retention of Wu's funds in Mega's accounts and other banking business, which would have been diminished if Super had been able to collect on its judgment or trace funds through Mega.[10] Id. at ¶ 51.

## III.     Discussion

I previously dismissed Plaintiff's RICO claims under § 1962(c) and § 1962(d) for failure to state a claim. With respect to Plaintiff's claim under § 1962(c), I dismissed it for failing to allege that Mega was sufficiently involved in the alleged enterprise, as required to hold Mega liable for civil RICO violations under § 1962(c). See DE 57 at 16-18. I also dismissed Super's claim under § 1962(c) for lack of reliance and proximate cause. With respect to Plaintiff's RICO conspiracy claim under § 1962(d), I concluded that the conspiracy claim failed based on my determination that Plaintiff had failed to state a claim for civil RICO under § 1962(c) or § 1962(a). See id. at 24-25 (citing Rogers v. Nacchio, 214 Fed. Appx. 602, 609 (11th Cir. 2007) ("Thus, where a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails.")). I now address Plaintiff's claims under § 1962(c) and § 1962(d), as alleged in the Second Amended Complaint.

The Plaintiff argues that the Second Amended Complaint is sufficient because there are enough facts alleged in the Second Amended Complaint to raise a reasonable expectation that discovery regarding Mega's alleged actions will reveal the specific merits

---

10

This allegation that Mega benefitted from the retention of Wu's funds and banking business at Mega, which would have been diminished if Super had been able to collect on its judgment was previously alleged, in a different form, in the First Amended Complaint as part of Super's claim under § 1962(a). See First Am. Compl. [DE 22] at ¶ 56-57. It now appears in the Second Amended Complaint as part of Super's allegations under § 1962(d).

12

of a RICO claim against Mega. (DE 67, page 4). The Plaintiff claims that, as alleged, "Mega's activities 'constitute more than an ordinary banking relationship, and are instead intended to further the objective of misrepresenting the nature of Wu and Mega's relationship." *Id.* (citing to S.A.C., ¶ 52). Upon review, I conclude that the Second Amended Complaint essentially does little more than restate the conclusory allegations of the First Amended Complaint. A comparison of the two complaints reveal almost identical allegations, with only non-material differences appearing. Because the Second Amended Complaint, being Plaintiff's third effort to plead here, fails to sufficiently address the significant deficiencies stated in my prior Order of Dismissal, I now dismiss with prejudice.

A. Plaintiff Super's Civil RICO claim under § 1962(c)

I reiterate, as I did in the prior Order, that a plaintiff "must satisfy four elements of proof: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" in order to establish a civil RICO violation under § 1962(c). *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006). Subsection § 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
18 U.S.C. § 1962(c).

In addition, Civil RICO plaintiffs must also show "(1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation." *Id.* at 1282-83; 18 U.S.C. § 1964(c)[11].

---

11

18 U.S.C. § 1964(c) provides, in relevant part:

Any person injured in his business or property by reason of a violation of

13

### 1. No RICO Enterprise Sufficiently Alleged

A civil RICO plaintiff "must establish 'conduct of an enterprise' and that the enterprise had a common goal." *Williams*, 465 F.3d at 1283 (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)) In order to be liable under civil RICO, the defendant "must exercise 'some degree of direction' of the enterprise as well as an element of 'control,'" and "liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *In re Managed Care Litig.*, 298 F.Supp.2d 1259, 1276 (S.D. Fla. 2003) (citing *Reves v. Ernst & Young*, 507 U.S. 170, 179, 184-185); *see Williams*, 465 F.3d at 1284-85.

The only significant "enterprise" allegations that the Plaintiff adds to the Second Amended Complaint is that Mega "controlled ... access to necessary information regarding Wu's banking enterprise (SAC ¶ 41) and that Mega was purportedly "more than just a bank" to Wu (SAC, ¶ 26). However, an allegation that Mega "controlled" information about Wu's accounts does not meet the legal criteria that Mega must have controlled some aspect of the alleged enterprise or Wu's funds. *See Chase & Sanborn Corp. v. Societe Generale*, 848 F.2d 1196, 1200 n.9 (11th Cir. 1988)(Banks merely held the funds "as agents or conduits for one of the real parties of the transactions"). Again, Plaintiff re-alleges that the enterprise in its claim under § 1962(c) is the "Mega-Wu Enterprise." In my previous order, I stated:

> section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.

14

Taking the Plaintiff's allegations as true and in the light most favorable to Plaintiff, Super alleges that Mega facilitated Wu's transfers and furthered the scheme to make Wu lawsuit-proof. At best, one of Mega's officers also served on the board of a Wu company, and one or more of Mega's employees regularly visited Wu in Miami in connection with his accounts at Mega. Mega also allegedly allowed Wu to transfer his Panamanian residence to a Wu-controlled company, allowed Wu to transfer funds, and refused to comply with the consent form or otherwise provide information about Wu's accounts to Super.

Considering these allegations together, I conclude that Plaintiff Super has not alleged the that Mega was sufficiently involved in the alleged enterprise, as required to hold Mega liable for civil RICO violations under § 1962(c). Plaintiff has not alleged sufficient facts to show that Mega participated in the operation or management of the alleged Mega-Wu enterprise itself. Based on Super's allegations, Mega did not control any aspect of the alleged enterprise, nor did Mega control the funds from Wu or Wu's companies. *See Chase & Sanborn Corp. v. Societe Generale*, 848 F.2d 1196, 1200, n.9 (11th Cir. 1988). Therefore, Mega did not exercise the requisite control over the alleged Mega-Wu enterprise, and Super's claims against Mega under § 1962(c) must therefore be dismissed.

Furthermore, as noted by the Eighth Circuit, "[b]ankers do not become racketeers by acting like bankers." *Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*, 934 F.2d 976, 981(8th Cir. 1991); *see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997) (noting policy concerns in holding banks liable for knowing the source of transferred funds). It is noteworthy that, in this case, Super only alleges that Mega benefitted from its relationship with Wu by receiving fees and deposits. Order [DE 57] at 16-17.[12]

Although Plaintiff Super superficially expands on its allegations in the Second

Amended Complaint, it does not allege additional facts to show that Mega participated in

the operation or management of the alleged Mega-Wu enterprise, as required to maintain

a civil RICO claim under § 1962(c). The allegations that Mega was "more than just a

banker for Wu" is based on the same allegations that Mega allowed its employee to serve

as an officer of Wu's entity and maintained Wu's various accounts with full knowledge that

---

[12]See my order at 17-18 for a more extensive discussion. [DE 57].

15

they were controlled by Wu (SAC § 26). The Plaintiff adds to the allegations by claiming, for example, that "Mega, through the operations of its Panamanian branch, willingly participated in Wu's business philosophy to maintain his status as 'lawsuit proof.'" S.A.C. at ¶ 8. It also expands on its allegations regarding the benefits that Mega allegedly gained from Wu's banking business. *Id.* at ¶ 40. However, none of these new allegations sufficiently allege or demonstrate that Mega controlled any aspect of the alleged Mega-Wu enterprise, nor do they show that Mega controlled funds from Wu or Wu's companies. I find the cases cited by Plaintiff to be distinguishable and thus unpersuasive. *See State Farm Mut. Auto Ins. Co. v. Weiss*, 410 F.Supp. 2d 1146, 1158 (M.D. Fla. 2006) (denying summary judgment and holding that doctor could be liable under civil RICO for insurance fraud where doctor was only medical doctor performing interpretations for Spectrum at the time, doctor's signature was necessary on insurance billing forms, and the scheme would not have succeeded without his involvement). Therefore, I again dismiss Plaintiff Super's claim under § 1962(c) because Plaintiff has not alleged that Mega exercised the requisite control of the alleged enterprise.

### 2. Insufficient Allegations of  Reliance and Proximate Cause

In my prior order, I also dismissed Plaintiff's claim under § 1962(c) for lack of reliance and proximate cause, based on the Eleventh Circuit's requirement that where a civil RICO claim is predicated on mail or wire fraud, the plaintiff must prove that it "relief to his detriment on the defendant's misrepresentations made in furtherance of that scheme" and "that the plaintiff suffered injury as a result of such reliance." *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1360 (11th Cir. 2002). I concluded that Super had failed to allege that it relied on Mega's alleged representations, and even if Super had alleged that it relied on

16

Mega's misrepresentations, I further held that Super had not sufficiently alleged that it was

injured by reason of any such reliance. Order [DE 57] at 19-20. The Order stated that

> The injuries of which Super complains–that Super has been unable to
> execute its judgment against Wu, that Super has been unable to obtain
> information that it is entitled to pursuant to the consent form, that Super has
> spent funds in unsuccessfully trying to obtain this information from Mega,
> and that Super has been forced to spend monies and expend energies on
> such things as private investigators in its attempts to uncover the information
> from other sources–are not alleged to have occurred because of any reliance
> by Super on Mega's representations.
> Id.

Since my last Order, the United States Supreme Court decided *Bridge v. Phoenix

Bond & Indem. Co.,* 128 S.Ct. 2131 (2008), which held that a RICO claim predicated on

mail or wire fraud need not show, either as an element of its claim or as a prerequisite to

establishing proximate causation, that it relied on the defendant's alleged

misrepresentation. However, Justice Thomas, writing for a unanimous court, also made

it clear that ".. this is not to say that a RICO plaintiff who alleges injury 'by reason of' a

pattern of mail fraud can prevail without showing that *someone* relied on the defendant's

misrepresentation. *Id.* at 2144. Justice Thomas further stated that "the complete absence

of reliance may prevent the plaintiff from establishing proximate cause." *Id.* He explained

that a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at

least third-party reliance in order to prove causation," *id.*, and commented "[b]y the same

token, the absence of first-party reliance may in some cases tend to show that an injury

was not sufficiently direct to satisfy § 1964(c)'s proximate-cause requirement, but it is not

in and of itself dispositive." *Id.*

Here, I assume that the Eleventh Circuit would follow and apply *Bridge*.[13] Notwithstanding, there are no new facts alleged which show any reliance or demonstrate sufficient proximate cause. The Second Amended Complaint contains no sufficient allegations that "anyone" relied on Mega's representations. Rather, citing *DeLong Equipment Co. v. Washington Mills Electro Minerals Corp.,* 990 F.2d 1186 (11th Cir. 1993), Plaintiff argues that even though it thoroughly disbelieved the alleged representations by the Mega's representatives at the May 20, 2004 meeting, reliance can be established if it acted "consistent with" the truth of those representations. Resp. at 13, n.7 [DE 67]. However, neither *DeLong* or *Bridge* stand for such a proposition. In *DeLong*, the plaintiff prevailed on its fraud claim by establishing that despite expressions of disbelief, it continued to purchase defendant's product at inflated prices in reliance on defendant's deceptive labeling. *Delong*, 990 F.2d at 1202-1203. The plaintiff did not prevail based simply on the fact that it "acted consistently" with the truth of the misrepresentations, but because it proved that it justifiably relied on those misrepresentations despite its oft-expressed disbelief. *Id.* at 1203 ("But Delong's inward lack of belief in Washington Mill's fraudulent assertions did not demonstrate itself in any external manifestation other than continued questioning, only to be met by continued misrepresentation.") Here, according to Plaintiff, it disbelieved Mega's representations as to the limited extent of Wu's and Wu-

---

13

See *United States v. Mendez*, 528 F.3d 811, 817 n.3 (11th Cir. 2008) ("When a prior panel decision conflicts with a subsequent Supreme Court decision, we must depart from the prior panel precedent and following the Supreme Court decision.") (citing *Cottrell v. Caldwell*, 85 F.3d 1480, 1485 (11th Cir. 1996); *see also McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) ("A circuit court's decision binds the district courts sitting within its jurisdiction while a decision by the Supreme Court binds all circuit and district courts.")

related accounts, and, as noted in the prior Order [DE 57 at 19], Plaintiff hired investigators and chased Wu in Panama and elsewhere.

With respect to the proximate cause requirement for § 1962(c) claims, the Eleventh Circuit instructs that "the central question [a court] must ask is whether the alleged violation led directly to the plaintiff's injuries." *Williams*, 465 F.3d at 1287 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)). Although a plaintiff in a § 1962(c) action does not have to show that the defendant's "injurious conduct is the sole cause of the injury asserted," nevertheless "there must be 'some direct relation' between the injury alleged and the injurious conduct in order to show proximate cause." *Williams*, 465 F.3d at 1287 (citing *Anza*, 547 U.S. at 457; *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 269 (1992). *Bridge* does not change this requirement. As noted above, *Bridge* still acknowledges that the absence of first-party reliance, and in this case no reliance by anyone, may tend to show that an injury was not sufficiently direct to satisfy § 1964(c)'s proximate cause requirement.

### 3. Insufficient Allegations of RICO Injury

The only alleged "injury" to Plaintiff Super which may have been proximately caused by Mega's misrepresentations is that Super has been unable to obtain information about Wu's accounts from Mega pursuant to the consent form. However, this "injury" is not sufficient to maintain a civil RICO claim for mail or wire fraud under § 1962(c). As noted in my prior order, "[a] plaintiff in a civil RICO action, when relying on the predicate acts of mail fraud, must show proof of loss of tangible property resulting from the defendant's conduct." *O'Malley v. O'Neill*, 887 F.2d 1557, 1559 n.5 (11th Cir. 1989) (discarding

predicate claim of mail fraud based on sending false reports to the INS and stating that "plaintiffs have not alleged that the government was deprived of any money or property by being sent false immigration reports); *see also United States v. Gimbel*, 830 F.2d 621 (7th Cir. 1987) ("However, the Supreme Court has recently held that the mail fraud statute is 'limited in scope to the protection of property rights,' and that it does not proscribe schemes to defraud individuals or entities of intangible rights.") (internal citations omitted) (citing *McNally v. United States*, 483 U.S. 350, 358-359 (1987), *superseded by statute*, 18 U.S.C. 1346 (1988) (providing that the "the term 'scheme or artifice to defraud' [in the mail fraud statute] includes a scheme or artifice to deprive another of the intangible right of honest services")).[14]

The Plaintiff offers no authority to support its theory, as alleged in the Second Amended Complaint, that it had a property right in information held by Mega regarding Wu's accounts. Nor does it address Mega's cases cited in its Motion refuting such a notion. DE 63 at 17. Additionally, the case law Plaintiff does cite to support that it suffered a

---

14

Although Congress amended the mail fraud statute in 1988 with 18 U.S.C. § 1346 to include "the intangible right of honest services," that amendment predates the Eleventh Circuit's decision in *O'Malley*, which dealt with a civil RICO claim predicated on mail fraud, as opposed to simple mail fraud. Furthermore, Plaintiff does not argue that Defendant is liable under civil RICO based a predicate act of "honest services" mail or wire fraud. *See United States v. Browne*, 505 F.3d 1229, 1265 (11th Cir. 2007) ("To prove 'honest services' mail fraud, the Government must show that the accused intentionally participated in a scheme or artifice to deprive the persons or entity to which the defendant owed a fiduciary duty of the intangible right of honest services . . . ."); *see also Cleveland v. United States*, 531 U.S. 12, 20 (2000) (discussing the amendment to the mail fraud statute in 18 U.S.C. § 1346 and stating that "[s]ignificantly, Congress covered only the intangible right of honest services even though federal courts, relying on *McNally*, had dismissed, for want of monetary loss to any victim, prosecutions under § 1341 for diverse forms of public corruption, including licensing fraud").

RICO injury because denial of access to information as to Wu's assets supposedly impacted the value of the Wu Judgment was abrogated by the same judge that issued it on a motion for reconsideration. *See Wooten v. Loshbough*, 649 F.Supp. 531, 536 (N.D. Ind. 1986), *abrogated by*, 738 F.Supp. 314 (N.D. Ind. 1990), *aff'd*, 951 F.2d 768 (7th Cir. 1991).

In the context of claims involving mail or wire fraud or transportation of stolen property, while the creditor may have a property right to receive payment from his debtor, it does not have a property right in specific assets of the debtor that might be used to satisfy the obligation. *United States v. Adler,* 186 F.3d 574, 577-580 (4th Cir. 1999)(while creditor had a property right in its claim against the debtor it did not have a property right in any particular property of the debtor; accordingly, by diverting debtor's property, defendant did not deprive the creditor of anything it actually owned and defendant was thus not liable under the wire fraud statutes).[15]

Therefore, I dismiss Plaintiff's claim under § 1962(c) for failure to allege that Mega exercised the requisite control over the Mega-Wu enterprise, and for the additional reason of lack of proximate cause.

### 4. Insufficient Allegations of Continuity

Even assuming that the Plaintiff had pled sufficient facts establishing each element of mail/wire fraud, the "pattern of racketeering activity" elements requires a RICO plaintiff

---

15

I also do not find that Plaintiff alleges sufficient injury as a result of expenses alleged to have been incurred as a result of relying on any Mega representation. Here, Super Vision alleges no facts that it spent money chasing Wu that it would not have otherwise spent.

to allege facts demonstrating a pattern of ongoing, continuing criminality or acts of criminality that promise to continue into the future. *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1265 (11th Cir. 2004). "Continuity" is either a "closed-ended" or an "open-ended" concept; it refers either to "a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Jackson*, 372 F.3d at 1265 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241-242 (1989)). For closed-ended continuity, a party claiming a RICO violation may demonstrate continuity over a substantial period of time. *H.J., Inc.*, 492 U.S. at 241-242. Alternatively, under an "open-ended" theory, liability depends on whether a threat of continuity is demonstrated. *Id.* In open-ended cases that rely on alleging the threat of continuity, plaintiffs must meet their burden by pleading "either that 'the racketeering acts themselves include a specific threat of repetition extending infinitely into the future,' or that 'the predicate acts or offense are part of an ongoing entity's regular way of doing business.'" *Jackson*, 372 F.3d at 1265 (quoting *H.J., Inc.*, 492 U.S. at 242).

Here, the only conduct consisting of mail or wire fraud that Mega allegedly committed was in October 2003 by allegedly permitting the transfer of Wu's Panamanian residence and the May 20, 2004 meeting, seven months later, and with only three months allegedly elapsing between the Plaintiff obtaining Wu's "consent" and the May 2004 events. The other vaguely-alleged transfers purportedly occurring, with the exception of one transfer from Wu's account at Ocean Bank to Stefanie, S.A., *see* S.A.C., Ex. G, are insufficient because there are no dates, amounts, sources or circumstances alleged, and even for the one transfer reflected in Exhibit G, Plaintiff has not alleged what

22

circumstances surrounded that transfer. Thus, as a matter of law, Mega's alleged conduct, as plead, does not span a sufficiently long period of time to establish closed-ended continuity. Nor are sufficient facts alleged that to establish "open-ended continuity." No facts are alleged that the acts "were part of [Mega's] 'regular way of doing business,' or that the illegal acts threatened repetition in the future." Jackson, 372 F.3d at 1267 (quoting H.J., Inc., 492 U.S. at 242-43); Aldridge v. Lily-Tulip, Inc. Salary Retirement Plan Benefits Committee, 953 F.2d 587, 593-94 (11th Cir. 1993) (holding that five year concealment of original fraud not sufficient for open-ended continuity, where acts were not alleged to threaten future harm or repetition). Accordingly, I dismiss on this ground as well.

### B. Plaintiff Super's Civil RICO claim under § 1962(d)

As stated in my prior order, in order to state a claim for civil RICO conspiracy under § 1962(d), a plaintiff must "allege an illegal agreement to violate a substantive provision of the RICO statute." Jackson, 372 F.3d at 1269. As such, "where a plaintiff fails to state a RICO claim and the conspiracy count does not contai n additional allegations, the conspiracy claim necessarily fails." Rogers, 241 Fed. Appx. at 609. According to the Eleventh Circuit, where the complaint fails to state a substantive civil RICO claim, a RICO conspiracy allegation "simply concludes that the defendants 'conspired and confederated' to commit conduct which it itself does not constitute a RICO violation." Jackson, 372 F.3d at 1269. In addition, a plaintiff must allege facts to support an agreement to violate a substantive provision of the RICO statute." Carter v. MGA, Inc., 189 Fed. Appx. 893, 894 (11th Cir. 2006) ("But plaintiffs alleged no facts to show or to create a reasonable inference that Defendants made an agreement. Plaintiff's conclusory allegations that Defendants

23

conspired with each other are insufficient to survive a motion to dismiss.")

Here, Plaintiff Super does not make additional allegations in its RICO conspiracy count against Mega, beyond those that Plaintiff alleges for its RICO claim under § 1962(c), and Plaintiff's RICO Statement provides that this Court does not allege separate violations of § 1962(a), § 1962(b), or § 1962(c). RICO Statement at 14. Plaintiff also only includes conclusory allegations that Mega agreed to violate RICO, without allegations of fact which would create a reasonable inference that Mega made such an agreement, and Plaintiff has thus not stated a RICO conspiracy claim under § 1962(d).

## C. Conclusion

Therefore, for the reasons stated in this order and my prior order [DE 57], I dismiss Plaintiff's civil RICO claims under § 1962(c) and § 1962(d). This dismissal shall be with prejudice because further amendment of Plaintiff's complaint would be futile and because Plaintiff fails to state a claim even after I allowed it to amend. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice. A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile.") (internal citations omitted). Here, it appears beyond doubt that Plaintiff cannot prove a set of facts that would entitle it to relief for violations of § 1962(c) or § 1962(d). *See id.* at 1164 (citing *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988). Consequently, I dismiss Plaintiff's Second Amended Complaint with prejudice.

24

Accordingly, it is hereby

ORDERED AND ADJUDGED that

1.   The Motion to Dismiss [DE 63] is GRANTED.

2.   This case is DISMISSED with prejudice.

3.   This case is CLOSED.

4.   Any other pending motions are DENIED as moot.

DONE AND ORDERED in Chambers in Miami, Florida this ___ day of _____, 2008.

THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
U.S. Magistrate Judge Chris M. McAliley
All counsel of record

25